# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

THE HUNTINGTON NATIONAL BANK,

    Plaintiff,

v.                                                      CIVIL ACTION NO. 2:23-cv-134

KEITH LYLE JOHNSON,

    Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

      This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and is referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 3]. Pending before the Court are two documents filed by Keith L. Johnson ("Mr. Johnson") on February 16, 2023, when he initiated the instant matter in this Court. [ECF No. 3]. For the reasons set forth *infra*, it is respectfully **RECOMMENDED** that the instant action be dismissed.

### I.

      Keith L. Johnson ("Johnson") initiated this matter with two filings: a one-page document titled "Notice of Constitutional Question" (the "Notice") [ECF No. 1], and a two-page document titled "Exception: Challenging This Procedure and Constitutional

Qualifications of Officers of the Court" (the "Exception") [ECF No. 2]. Both documents are somewhat difficult to decipher, as they provide few allegations of fact or other context to explain the nature of this matter. Turning to the first document, Mr. Johnson's Notice only sets forth three sentences, as follows, *verbatim*:

> COMES NOW, keith-lyle: johnson, a party of interest in this proceeding having filed an Exception entitled: "challenging this proceeding and constitutional qualifications of offices of the court," and EXHIBIT A. "An Act to regulate Time and Manner of administering certain Oaths", Whom now gives this notice to the Attorney General of the United States of the following Constitutional Question.
>
> Question: Is it constitutional to require "officers of the court" in this proceeding to execute the oath in "An Act to regulate the Time and Manner of administering certain oaths" and have a record or certificate as proof they are qualified to execute the duties of their respective offices?

[ECF No. 1]. Turning to the second document filed by Mr. Johnson, the Exception is solely comprised of eight statements, as follows, *verbatim*:

> This proceeding is unconstitutional and a malicious prosecution unless the 'officers of the court' involved have executed the oath in 'An Act to regulate the Time and Manner of administering certain courts,' and provide parties of interest a record or certificate to prove that they are qualified in accordance with said act.
>
> The People's Law Dictionary Defines an officer of the court as: n. Any person who has an obligation to promote justice and effective operation of the judicial system, including judges, attorneys who appear in court, bailiffs, clerks, and other personnel.
>
> Blacks Law Dictionary 2nd Edition defines a judicial officer as 'A justice for the peace, magistrate, or judge of any other officer of the court,' and
>
> Whereas, 'An Act to regulate the Time and Manner of administering certain oaths' (EXHIBIT A) is the first act of Congress signed into law after the ratification of the constitution of the United States, and was incorporated into the 'United States Statutes at Large' as 1 Stat. 23, in which is enacted:
>
> 'That the Oath or affirmation required by the sixth article of the constitution of the United States, shall be administered in the form of the following to wit: I keith-lyle: johnson do solemnly swear or affirm that I will support the Constitution of the United States.'

> Whereas 1 USC 112. Statutes at Large; contents, admissibility in in evidence, Requires that:
>
> 'The United States Statutes at Large' shall be legal evidence of laws,........in all the courts of the United States, the several states, and the Territories...... of the United States.
>
> keith-lyle: johnson a party of interest damaged by this simulated legal process under color of law request damages for the occurrence of an intentional tort, and the prosecution of public imposters.

[ECF No. 2 at 1-2]. Attached to Mr. Johnson's Exception as "Exhibit A" is a copy of Chapter I, Volume 1, Sections 1-5 of the United States Statutes at Large, which was published by the First Session of the First U.S. Congress on June 1, 1789. [*See* ECF No. 2-1]. This statute appears to be the "EXHIBIT A" referenced in the first sentence of Mr. Johnson's Notice, as well as the "(EXHIBIT A)" referenced in the fourth statement of the Exception. [ECF Nos. 1 at 1 ¶ 1; 2 at 1 ¶ 4].

Based upon the lack of factual context within these filings to connect what appear to be legal arguments by Mr. Johnson regarding objections to an "officer of the court" and/or "judicial officer" in a prior "proceeding" in which he was "a party of interest," the factual and legal bases for Mr. Johnson's appearance before this Court is decidedly unclear. The case caption and style at the top of both documents, however, provide one additional clue. In the portion of the case caption which generally identifies the name of the court, both documents identify the Circuit Court of Kanawha County, West Virginia. *Id*. Further, the style of the case is *The Huntington National Bank, Plaintiff, v. Keith Lyle Johnson, Defendant*, Kanawha County Circuit Court Civil Action No. 22-P-173 (hereinafter the "state-court matter"). *Id*. Based upon these identifiers in the case style and caption of Mr. Johnson's Notice and the Exception, it appears that Mr. Johnson was named as the Defendant in Civil Action Number 22-P-173, which was filed by Plaintiff

The Huntington National Bank ("HNB") in the Kanawha County Circuit Court at some time in the year 2022. Aside from the Notice and Exception filed on February 16, 2023, Mr. Johnson has not provided this Court with any documents of record from the state-court matter; nor has he provided any other information regarding the status or the substance of those proceedings. However, the undersigned takes judicial notice that, as confirmed by the Office of the Kanawha County Circuit Clerk via telephone with a member of the undersigned's staff on June 25, 2024, the state-court matter resulted in a final order of judgment granted by the Kanawha County Circuit Court to HNB against Mr. Johnson on December 16, 2022, and that the state-court matter has concluded.

The undersigned further noted from the docket in this case that Mr. Johnson did not pay the statutory filing fee when he initiated the instant matter in this Court. *See* 28 U.S.C. §§ 1914; 1915(a)(1). Consequently, the undersigned entered an Order to Show Cause (the "Order") on April 11, 2024. [ECF No. 4]. In relevant part, the Order required Mr. Johnson either (A) pay the statutory filing fee to the Clerk of Court, or (B) file an Application to Proceed Without Prepayment of Fees and Costs. *Id.* The Order expressly required Mr. Johnson to either pay the fee or file an application by no later than 5:00 p.m. EST on May 15, 2024. Finally, the Order expressly notified Mr. Johnson of the consequences for his failure to comply with this requirement. *Id.* at 2. Specifically, the Order stated the following, in bold, underlined font: "**Mr. Johnson is hereby NOTIFIED that failure to comply with one or more of the directives of the instant order WILL result in the undersigned's recommendation to the presiding District Judge that this matter be dismissed**." *Id.* The Clerk of Court mailed a blank Application to Proceed Without Prepayment of Fees and Costs to Mr. Johnston at his address of record on the same date the Order was entered. Nothing on the

4

record indicates that Mr. Johnson did not receive the Clerk's mailing. Despite the undersigned's warning, however, Mr. Johnson did not file a response by the May 15, 2024 deadline. In fact, Mr. Johnson has not taken *any action* in the instant matter—or otherwise communicated with the Court—in approximately 500 days, when he filed the Notice and Exception in this Court on February 16, 2023.

**II.**

A party seeking to proceed with a civil matter in this Court may not move forward without paying the statutory filing fee. Even assuming, *arguendo*, that Mr. Johnson had filed an application to proceed *in forma pauperis*, however, the matter would nonetheless be subject to dismissal. This Court has an independent statutory duty to "screen" the initial filings of pro-se parties who seek to proceed *in forma pauperis* by assessing the merits of each pleading and excluding those suits lacking an "arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e). The court must dismiss a pleading filed *in forma pauperis* any time it determines that "the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). The statute also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). Furthermore, as part of its initial screening pursuant to 28 U.S.C. § 1915, this Court may determine whether it has subject matter jurisdiction over the claims at issue. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure.").

5

Pro-se pleadings are held to less stringent standards than those drafted by attorneys, and the court is obliged to afford pro-se pleadings with a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the liberal-construction standard does not mean that the Court may ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### III.

Mr. Johnson's filings are patently deficient on a number of bases. To protect the Court's efficient administration of its docket and to "secure the just, speedy, and inexpensive determination of every action and proceeding" before it, *see* Fed. R. Civ. P. 1, only three deficiencies are addressed in turn, *infra*. First, dismissal with prejudice is proper because Mr. Johnson failed to prosecute this civil action. Likewise, dismissal with prejudice is proper because Mr. Johnson's Notice and Exception fail to state a claim on which relief may be granted. Finally, dismissal without prejudice is proper in the alternative because the Court is barred under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction.

**A.      Failure to Prosecute**

The Federal Rules of Civil Procedure authorize the Court to dismiss an action involuntarily when the plaintiff "fails to prosecute or to comply with the[ ] rules or a court order[.]" Fed. R. Civ. P. 41(b). "[B]uild[ing] upon a federal court's well-established inherent authority, of ancient origin, to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts," the dismissal authority conferred by Rule 41(b) "recognizes the foundational principle that courts must have the authority to control litigation before them." *Ramsey v. Rubenstein*,

2:14-CV-03434, 2016 WL 5109162, at *2 (S.D. W. Va. Sept. 19, 2016) (citations omitted). Although Rule 41(b) does not expressly provide for sua sponte dismissal, "a district court has the inherent power to dismiss a case for lack of prosecution or violation of a court order . . . whether or not a defendant makes a motion requesting that such action be taken." *Id.* at *2. *See also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.").

In *Hillig v. Comm'r of Internal Revenue*, the Fourth Circuit set forth four distinct factors that a federal district court must consider in determining whether to dismiss an action for failure to prosecute pursuant to Federal Rule 41(b): first, the plaintiff's degree of personal responsibility for not prosecuting the action; second, the amount of prejudice that this failure caused the defendant(s) to incur; third, the context of the plaintiff's failure to prosecute in relation to the overall litigation—particularly, whether there has been a drawn-out history of plaintiff's deliberately proceeding in a dilatory fashion; and, fourth and finally, the effectiveness of sanctions less drastic than dismissal. 916 F.2d 171, 174 (4th Cir. 1990)) [hereinafter the *Hillig* "factors"]. These four factors "are not meant to be applied as a rigid, formulaic test, but rather serve to assist the Court, along with the particular circumstances of each case, in determining whether or not dismissal is appropriate." *Ramsey*, 2016 WL 5109162, at *2 (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1991)). Although dismissal with prejudice is "a harsh sanction which should not be invoked lightly[,]" *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978), the ultimate decision of whether dismissal is proper is left to the discretion of the district court. *See, e.g., Timmons v. United States*, 194 F.2d 357, 359 (4th Cir. 1952). "Where a litigant has ignored an express warning that noncompliance with a court order will result in dismissal,

the district court should dismiss the case." *Douglas v. Heater*, No. 2:20-CV-00856, 2021 WL 784806, at *2 (S.D.W. Va. Mar. 1, 2021) (citing *Bey ex rel. Graves v. Virginia*, 546 F. App'x 228, 229 (4th Cir. 2013) (per curiam)).

In the matter *sub judice*, all four factors support involuntary dismissal pursuant to Rule 41(b). In consideration of the first factor—the Plaintiff's degree of personal responsibility for not prosecuting the action—the record clearly shows that the delays in this case are attributable solely to the Plaintiff. This action may not move forward unless and until Mr. Johnson either pays the statutory fee for initiating a civil action in the U.S. District Court for the Southern District of West Virginia, or moves for leave to proceed *in forma pauperis* by filing an Application to Proceed Without Prepayment of Fees and Costs. Moreover, he completely ignored the undersigned's April 11, 2024 Order to Show Cause requiring Mr. Johnson to pay the fee or apply to proceed *in forma pauperis* by May 15, 2024. [ECF No. 4]. The Clerk of Court mailed a blank Application to Proceed Without Prepayment of Fees and Costs to Mr. Johnston at his address of record on the same date the Order was entered. The Clerk's mail was not returned, and nothing else on the record indicates that Mr. Johnson failed to receive the Clerk's mailing. Based upon these facts, the undersigned **FINDS** that the first factor weighs in favor of dismissal.

Turning to the second factor—the amount of prejudice caused to the opposing party—the record does not show that HNB incurred substantial prejudice. Because this action could not move forward until Mr. Johnson complied with the undersigned's Order as set forth, *supra*, HNB has not been served and has not entered an appearance before this Court. Accordingly, the undersigned **FINDS** that the second factor weighs against dismissal.

The third factor—the presence of a drawn-out history of deliberately proceeding in a dilatory fashion—is evident from the face of the record. In addition to ignoring the undersigned's April 11, 2024 Order to Show Cause, Mr. Johnson has not taken *any action* in the instant matter since he initiated this matter on February 16, 2023. As Mr. Johnson has not taken any action in this case and has not otherwise communicated with the Court in approximately 500 days, he clearly has been dilatory in pursuing this action. Thus, the undersigned **FINDS** that the third factor set forth in *Hillig* weighs in favor of dismissal.

Finally, the fourth factor—the effectiveness of sanctions less drastic than dismissal—also weighs in favor of dismissal pursuant to Rule 41(b), and in fact is dispositive under the circumstances. As discussed *supra*, Plaintiff completely ignored the undersigned's express warning that a recommendation of dismissal would be the consequence of his failure to either pay the statutory filing fee or file an Application to Proceed Without Prepayment of Fees and Costs on or before May 15, 2024. [ECF No. 4]. Specifically, the language employed in the Order to Show Cause stated the following, in bold, underlined font: "**Mr. Johnson is hereby NOTIFIED that failure to comply with one or more of the directives of the instant order WILL result in the undersigned's recommendation to the presiding District Judge that this matter be dismissed**." *Id*. Despite the undersigned's warning, however, Mr. Johnson did nothing. The Fourth Circuit explained that, "[w]here a litigant has ignored an express warning that noncompliance with a court order will result in dismissal, the district court should dismiss the case." *Douglas*, 2021 WL 784806, at *2. This is particularly so when, for approximately *five hundred* days, Mr. Johnson has done nothing to advance his case. These circumstances plainly demonstrate that "a less drastic course would likewise have no effect." *Peterson v. Wyeth LLC*, 2:13-5805, 2013 WL 2607640, at *1 (S.D.W. Va. June

11, 2013) (dismissing for failure to prosecute when plaintiffs ignored the court's warning that further inaction would constitute grounds for dismissal). Finally, "a Rule 41(b) dismissal is with prejudice." *Link*, 370 U.S. at 629-631. Based upon the foregoing, therefore, the undersigned **FINDS** that dismissal with prejudice is proper pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

**B.     Failure to State a Claim**

Next, dismissal with prejudice is likewise proper pursuant to 28 U.S.C. § 1915(e), because Mr. Johnson failed to state a claim upon which relief may be granted. Based upon the entirety of the record before the Court in this matter, construing the two documents as liberally as possible due to Mr. Johnson's status as a pro-se party, it appears that Mr. Johnson seeks to challenge the judgment entered against him in the state-court matter as constitutionally deficient. While the Court can only speculate based upon the dearth of information provided by Mr. Johnson, it appears that his constitutional challenge to the state-court judgment is based upon his belief that the state court lacked proper authority to enter the judgment—which relates, in a manner not alleged by Mr. Johnson, to government officials' oath to support the Constitution of the United States.

The connection between these disparate ideas, however, is completely unaddressed in either of Mr. Johnson's filings. Nowhere on the record does Mr. Johnson attempt to identity, allege, or otherwise address how the brief statements in his Notice and Exception relate to "the occurrence of an intentional tort." There are no factual allegations from which the Court could reasonably infer the act(s) or omission(s) Mr. Johnson believes constituted the alleged "intentional tort;" the identity of the actor(s) he characterizes as "public imposters;" the basis for characterizing the state-court action as

"simulated legal process;" or any other factual allegations which he alleges give rise to his challenge of the state-court proceedings and authority of the Kanawha County Circuit Court and any of its officials, or the relief he seeks in the instant action before this Court. Nor does Mr. Johnson attempt to explain how an official's oath to support the Constitution provides a legal basis for questioning the authority of any judicial officer and/or officer of the court under the specific circumstances of the state-court matter. The numerous and monumental gaps in factual context render the claims Mr. Johnson seeks to assert—if any—entirely implausible. Simply put, Mr. Johnson's filings before this Court constitute nothing more than "an unadorned, [someone] unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Such allegations are fundamentally insufficient to make a facially-plausible legal claim for relief. The undersigned thus **FINDS** that this civil action brought by Mr. Johnson lacks any basis in fact or law, and as such, is patently frivolous. As a result, this matter should be dismissed with prejudice.

**C.  Subject-Matter Jurisdiction**

Alternatively, dismissal of this action without prejudice is proper because the *Rooker–Feldman* doctrine bars this Court from exercising subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1915(e). As part of its initial screening pursuant to 28 U.S.C. § 1915, this Court may determine whether it has subject matter jurisdiction over the instant action. *Lovern*, 190 F.3d at 654. Having examined the allegations and requested relief set forth in Mr. Johnson's February 16, 2022 filings, the undersigned **FINDS** that this Court lacks subject-matter jurisdiction over the instant action pursuant to the *Rooker-Feldman* doctrine. Consequently, the action must be dismissed without prejudice.

11

It is well-established that the Court should dismiss a case *sua sponte* when subject matter jurisdiction is lacking. *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) ("It is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte*, to ensure that it does not decide controversies beyond its authority."). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, "[a] district court has 'an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it.' " *Greene v. Joyner*, No. JFM-17-688, 2017 WL 1194175, at *2 (D. Md. Mar. 30, 2017) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)). Whether the court has jurisdiction depends upon the allegations contained in the complaint. *See Pinkley*, 191 F.3d at 399 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) (explaining the party seeking federal jurisdiction must allege facts that are essential to show jurisdiction)).

The Supreme Court of the United States unequivocally established, in what is known as the *Rooker-Feldman* doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Lucas v. Wayne Cty. Courts*, 3:21-cv-00284, 2021 WL 2585476, at *2 (S.D.W. Va. June 4, 2021), *adopted*, 2021 WL 2581425 (June 23, 2021) (citations omitted); *see also Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (holding that the *Rooker-Feldman* doctrine is narrow in scope, but applies whenever a federal district court is asked to exercise "what would be, in substance, appellate jurisdiction over final state-court judgments.") (citing *Thana v. Bd. of License Comm'rs for Charles Cty., Maryland*, 827 F.3d 314, 320 (4th Cir. 2016)); *and Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). In *Exxon*, the Supreme Court explained that federal district courts

12

are precluded from reviewing "cases brought by [1] state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. This four-factor test now applies to "issues actually presented to and decided by a state court" and "constitutional claims that are inextricably intertwined with questions ruled upon by a state court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).

In the instant civil action before the Court, the relief Mr. Johnson appears to seek satisfies all four elements of *Rooker–Feldman*. First, Mr. Johnson lost in the Circuit Court of Kanawha County, West Virginia, when a final judgment was entered against him in favor of HNB on December 16, 2022. Second, Mr. Johnson's allegations in the Notice and Exception, while unclear, appear to complain solely of "injuries caused by [the] state-court judgment[]" itself. *Exxon*, 544 U.S. at 284. Mr. Johnson identifies himself in the Exception as "a party of interest *damaged by this simulated legal process* under color of law [who] request[s] damages for the occurrence of an intentional tort, and the prosecution of public imposters." [ECF No. 2 at 2]. While vague, this statement is the sole allegation of injury or damages contained in Mr. Johnson's filings, and it directly attributes his damages to the only proceedings identified therein: the state-court matter, in which a judgment was entered against Mr. Johnson.

Third, it is clear that the state-court judgment was "rendered before the district court proceedings commenced" in the instant action. *Exxon*, 544 U.S. at 284. As set forth, *supra*, the state-court judgment was entered on December 16, 2022. Mr. Johnson did not initiate the instant action until he filed the Notice and Exception over sixty days later on February 16, 2023.

13

Fourth and finally, while Mr. Johnson's filings contain little factual material, clear requests for specific relief, or other context, it does appear from the information that is available on the record that Mr. Johnson seeks this Court's "review and rejection" of the state-court judgment. *Exxon*, 544 U.S. at 284. For instance, the Notice [ECF No. 1] references Mr. Johnson's Exception [ECF No. 2], and explains that the Exception is "entitled: 'Challenging this proceeding and constitutional qualifications of office[r]s of the court.'" [ECF No. 1]. While Mr. Johnson does allude in the Exception to a "request" for unspecified "damages" in the Exception, such damages appear to stem from the state-court matter itself—the legitimacy of which Mr. Johnson vaguely calls into question. For instance, Mr. Johnson's Notice characterizes his Exception as "[c]hallenging this proceeding"—ostensibly referring to the state-court matter—along with challenging the "constitutional qualifications" of unidentified "office[r]s of the court"—ostensibly those officer(s) presiding over the state-court matter. *Id.*

Similarly, the "Question" in Mr. Johnson's Notice refers to seeking "proof" that these unidentified officers of the court "are qualified to execute the duties of their respective offices[.]" *Id.* Likewise, in the Exception, Mr. Johnson characterizes the state-court matter as an "unconstitutional . . . proceeding," as well as a "malicious prosecution," and once again refers to seeking "a record or certificate to prove that . . . the 'officers of the court' involved . . . are qualified[.]" [ECF No. 2 at 1]. Mr. Johnson's Exception also characterizes the state-court matter as a "simulated legal process," and characterizes these unidentified "officers of the court" involved in the state-court matter as "public imposters." *Id.* at 2. A challenge to the legitimacy of the judicial process—and the qualification of the judicial officer or officers involved in entering the judgment—constitutes an indirect, but fundamental, challenge to the validity of the judgment itself.

14

The instant action thus satisfies the fourth *Exxon* factor, in addition to the foregoing three. Consequently, this is just the type of action barred by the *Rooker-Feldman* doctrine. As the *Rooker–Feldman* doctrine bars this Court from exercising subject-matter jurisdiction over the instant action under the circumstances, dismissal without prejudice is proper pursuant to 28 U.S.C. § 1915(e).

## IV.

For the foregoing reasons, it is respectfully **RECOMMENDED** that this civil action be dismissed from the Court's docket, with prejudice, for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, and/or failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e). Alternatively, the undersigned respectfully **RECOMMENDS** that this civil action be dismissed from the Court's docket, without prejudice, for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Johnston and to each opposing party,

except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, to transmit a copy to Judge Johnston, any counsel of record, and any unrepresented party.

ENTERED: June 28, 2024

Dwane L. Tinsley
United States Magistrate Judge